1  **WO**

2

3

4

5

6  **IN THE UNITED STATES DISTRICT COURT**

7  **FOR THE DISTRICT OF ARIZONA**

8

9  Roger Wayne Murray,                )    No. CV 03-775-PHX-DGC
                                       )
10            Petitioner,              )    DEATH PENALTY CASE
                                       )
11  vs.                                )
                                       )
12                                     )    **ORDER**
                                       )
13  Dora Schriro, et al.,              )
                                       )
14            Respondents.             )
                                       )
15                                     )
                                       )
16  _____)

17      Petitioner Roger Wayne Murray ("Petitioner") is a state prisoner sentenced to

18  death.  Before the Court are Petitioner's Motion for Discovery and Evidentiary Hearing and

19  Motion to Expand the Record Under Rule 7 of the Rules Governing Section 2254 Cases.

20  (Dkts. 72, 73.)[1]   Petitioner requests expansion of the record, discovery and/or an

    evidentiary hearing in support of Claims 1, 2, 4-7, 23, 29, 34-37, 40/41, 42, 44, 45 and 48.[2]

21  Respondents filed responses, and Petitioner filed replies.  (Dkts. 81, 82, 84, 86.)

22      Pursuant to the Court's general procedures governing resolution of capital habeas

23  proceedings, the parties have completed briefing of both the procedural status and the

24  merits of Petitioner's habeas claims.  The Court will address whether the claims for which

25  _____

26      [1] "Dkt." refers to the documents in this Court's case file.

27      [2] In his Traverse, Petitioner joined Claims 40 and 41, which present the same issue.

28  (Dkt. 56 at 41.)

Petitioner seeks evidentiary development are appropriate for review on the merits by a federal habeas court.  The Court will also address the procedural status of Claims 30-33, which Petitioner purports to withdraw or dismiss without prejudice. (Dkt. 56 at 34.)  In his Traverse, Petitioner voluntarily withdrew Claims 43, 47, 49-52 and 54-56 as duplicative of other claims in the Amended Petition.  (Dkt. 56 at 41, 50, 56, 57-58.)  Accordingly, these claims are no longer before the Court and will be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 12, 1992, Petitioner and his older brother, Robert, were jointly tried and convicted by a jury of one count of armed robbery and two counts of first degree murder in the deaths of Dean Morrison and Jacqueline Appelhans.  The murders occurred in the course of an armed robbery of a store and restaurant run by Morrison and Appelhans, and of their adjacent home, located in Grasshopper Junction, a rural area outside Kingman, Arizona.  Mohave County Superior Court Judge James E. Chavez sentenced Petitioner and his brother to death on each murder count and to a term of imprisonment for the armed robbery.  The Arizona Supreme Court affirmed the convictions and sentences of each brother in a joint opinion. State v. Murray, 184 Ariz. 9, 906 P.2d 542 (1995).  On November 21, 1995, Petitioner filed a motion for reconsideration.  (ROA 36.)[3]  That motion was denied. (ROA 37.)  A petition for writ of certiorari was subsequently denied by the United States Supreme Court. Murray v. Arizona, 519 U.S. 874 (1996).

---

[3]  "ROA" refers to the one-volume record in Petitioner's direct appeal (Case No. CR-92-0441-AP).  "CROA" refers to the four-volume record, and one sealed envelope, in Robert Murray's companion direct appeal (Case No. CR-92-0440-AP).  "PCR" refers to documents contained in the three-volume record from Petitioner's post-conviction proceedings (Case No. Mohave CR-13057).  "PR doc." refers to enumerated documents contained in the three-volume record on appeal from Petitioner's post-conviction proceedings (Case No. CR 01-0146-PC).  "RT" refers to the reporter's transcripts.  The original reporter's transcripts and certified copies of trial and post-conviction records were provided to this Court by the Arizona Supreme Court on September 23, 2004 in this case (dkt. 59), and on November 13, 2001 in Robert Murray's habeas action, CV 99-1812-PHX-DGC, which is also before this Court.

On March 9, 1999, Petitioner filed a petition for postconviction relief ("PCR") in the trial court ("PCR court"). The PCR court summarily rejected or found precluded most of Petitioner's claims, but it appointed a psychologist and neuropsychologist to evaluate Petitioner preparatory to an evidentiary hearing to be held on two ineffective assistance of counsel ("IAC") claims alleging that trial counsel: (1) slept during portions of the trial, and (2) failed to obtain neurological or neuropsychological testing for purposes of mitigation at sentencing. (PCR Order filed 1/10/00.) Following examination by the appointed experts, Petitioner notified the PCR court that he did not intend to rely on those experts. (PCR Notice filed 12/18/00.) The PCR court granted the Respondents' motion to dismiss the second IAC claim and held an evidentiary hearing on the first. (PCR Order filed 4/16/01.) Following the evidentiary hearing, the PCR court denied relief on that claim and dismissed the petition. (PCR Order filed 3/21/02.)

The Arizona Supreme Court summarily denied a Petition for Review except as to Petitioner's claim that he was entitled to a jury determination of aggravating factors. (PR docs. 29, 30.) With respect to that claim, the Arizona Supreme Court consolidated review with claims of other similarly-situated inmates and subsequently denied relief, see State v. Towery, 204 Ariz. 386, 64 P.3d 828 (Ariz. 2003). (PR doc. 37.) The court thereafter denied Petitioner's motion for reconsideration. (PR doc. 40.) Petitioner filed a petition for writ of certiorari, which he later withdrew. (PR docs. 42, 43.) Petitioner then initiated the instant habeas proceedings. (Dkt. 1.)

## PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT

Because this case was filed after April 24, 1996, it is governed by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"). Lindh v. Murphy, 521 U.S. 320, 336 (1997); Woodford v. Garceau, 538 U.S. 202, 210 (2003). The AEDPA requires that a writ of habeas corpus not be granted unless it appears that the petitioner has properly exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); see also Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509 (1982). To properly exhaust state remedies, the petitioner must "fairly present" his claims to the

1    state's highest court in a procedurally appropriate manner. O'Sullivan v. Boerckel, 526 U.S.
2    838, 848 (1999).

3         A claim is "fairly presented" if the petitioner has described the operative facts and
4    the federal legal theory on which his claim is based so that the state courts have a fair
5    opportunity to apply controlling legal principles to the facts bearing upon his
6    constitutional claim. Anderson v. Harless, 459 U.S. 4, 6 (1982); Picard v. Connor, 404 U.S.
7    270, 277-78 (1971).[4]   If a petitioner's habeas claim includes new factual allegations not
8    presented to the state court, the claim may be considered unexhausted if the new facts
9    "fundamentally alter" the legal claim presented and considered in state court. Vasquez v.
10   Hillery, 474 U.S. 254, 260 (1986).

11        A habeas petitioner's claims may be precluded from federal review in either of two
12   ways.  First, a claim may be procedurally defaulted in federal court if it was actually raised
13   in state court but found by that court to be defaulted on state procedural grounds.
14   Coleman, 501 U.S. at 729-30.  Second, a claim may be procedurally defaulted in federal court
15   if the petitioner failed to present the claim in any forum and "the court to which the
16   petitioner would be required to present his claims in order to meet the exhaustion
17   requirement would now find the claims procedurally barred." Id. at 735 n.1.  This is often
18   referred to as "technical" exhaustion – although the claim was not actually exhausted in
19   state court, the petitioner no longer has an available state remedy. See Gray v. Netherland,
20   518 U.S. 152, 161-62 (1996) ("A habeas petitioner who has defaulted his federal claims in
21   state court meets the technical requirements for exhaustion; there are no state remedies any
22   longer 'available' to him.").

23        Rule 32 of the Arizona Rules of Criminal Procedure governs when petitioners may
24   seek relief in post-conviction proceedings and raise federal constitutional challenges to

25   _____

26        [4]  Resolving whether a petitioner has fairly presented his claim to the state court,
27   thus permitting federal review, is an intrinsically federal issue which must be determined
     by the federal court. Wyldes v. Hundley, 69 F.3d 247, 251 (8th Cir. 1995); Harris v.
28   Champion, 15 F.3d 1538, 1556 (10th Cir. 1994).

their convictions or sentences in state court.  Rule 32.2 provides, in part:

> a.  Preclusion.  A defendant shall be precluded from relief under this rule based upon any ground:
> . . . .
>
> (2)  Finally adjudicated on the merits on appeal or in any previous collateral proceeding;
>
> *(3)  That has been waived at trial, on appeal, or in any previous collateral proceeding.*
>
> b.  Exceptions.  Rule 32.2(a) shall not apply to claims for relief based on Rules 32.1(d), (e), (f), (g) and (h).  When a claim under [these subsections] is raised in a successive or untimely petition, the petition must set forth the reasons for not raising the claim in the previous petition or in a timely manner.  If meritorious reasons do not appear substantiating the claim and indicating why the claim was not stated in the previous petition or in a timely manner, the petition shall be summarily dismissed.

Ariz. R. Crim. P. 32.2 (2002) (emphasis added).  Thus, pursuant to Rule 32.2, petitioners may not be granted relief on any claim which could have been raised in a prior Rule 32 petition for post-conviction relief.  Similarly, pursuant to Rule 32.4, petitioners must seek relief in a timely manner.  Only if a claim falls within certain exceptions (subsections (d) through (h) of Rule 32.1) and the petitioner can justify why the claim was omitted from a prior petition or was not presented in a timely manner will the preclusive effect of Rule 32.2 be avoided.  Ariz. R. Crim. P. 32.2(a)(3), 32.4(a).

In the present case, if there are claims which have not been raised previously in state court, the Court must determine whether Petitioner has state remedies currently available to him pursuant to Rule 32.  If no remedies are currently available, petitioner's claims are "technically" exhausted but procedurally defaulted.  Coleman, 501 U.S. at 732, 735 n.1.  In addition, if there are claims that were fairly presented in state court but found defaulted on state procedural grounds, such claims also will be found procedurally defaulted in federal court so long as the state procedural bar was independent of federal law and adequate to warrant preclusion of federal review.  Harris, 489 U.S. at 262.  A state procedural default is not independent if, for example, it depends upon an antecedent federal constitutional ruling.  See Stewart v. Smith, 536 U.S. 856 (2002) (per curiam).  A state bar is not adequate unless it was firmly established and regularly applied at the time of

1    application by the state court.  Ford v. Georgia, 498 U.S. 411, 424 (1991).

2          Because the doctrine of procedural default is based on comity, not jurisdiction,

3    federal courts retain the power to consider the merits of procedurally defaulted claims.

4    Reed v. Ross, 468 U.S. 1, 9 (1984).  As a general matter, the Court will not review the merits

5    of procedurally defaulted claims unless a petitioner demonstrates legitimate cause for the

6    failure to properly exhaust in state court and prejudice from the alleged constitutional

7    violation, or shows that a fundamental miscarriage of justice would result if the claim were

8    not heard on the merits in federal court.  Coleman, 501 U.S. at 735 n.1.  Because Petitioner

9    does not assert that either cause and prejudice or a fundamental miscarriage of justice

10   excuses the procedural default of any claim at issue in this Order, the Court does not

11   further address those issues.

12                        **PROCEDURAL STATUS OF CLAIMS**

13         The Court reviews the procedural status of the claims for which evidentiary

14   development is sought and/or those that Petitioner seeks to dismiss without prejudice:

15   Claims 1, 2, 4-7, 23, 29-37, 40/41, 42, 44, 45 and 48.  Respondents concede that Claims 1 (in

16   part), 2, 4 (in part), 5 (in part), 6 (in part), 7 (in part), 40/41 (in part), 42, 45 and 48 are properly

17   exhausted.[5]  (Dkt. 46.)  Respondents contest ripeness of one claim and exhaustion of the

18   remaining claims.

19         **Claim 1 (in part)**

20         Claim 1 alleges that Petitioner's Fifth, Sixth, Eighth and Fourteenth Amendment

21   rights were violated by the trial court's denial of his motion to change venue based on

22   pretrial publicity.  (Dkt. 40 at 49.)  Respondents contend this claim is only exhausted to the

23   extent that it alleges a violation of due process.  (Dkt. 46 at 13.)  Petitioner replies that he

24   presented this claim as a violation of his Sixth and Fourteenth Amendment rights on direct

25   appeal.  (Dkt. 56 at 7.)

26

27         ─────────────────────

28         [5]   Respondents misidentified Claims 42, 44, and 48 in their Answer, which were
     mislabeled as Claims 41, 43, and 47, respectively.  (Dkt. 46 at 73, 74, 82.)

1    Petitioner presented the Sixth and Fourteenth Amendment aspects of this claim on

2  direct appeal. (ROA 15 at 14, 16.)  Therefore, these portions of this claim are exhausted.

3  However, Petitioner did not present the Fifth and Eighth Amendment aspects of this claim

4  in state court.  Petitioner is now precluded by Arizona Rules of Criminal Procedure

5  32.2(a)(3) and 32.4 from obtaining relief in state court on these aspects absent an applicable

6  exception, which he does not assert.[6]  The Court finds the Fifth and Eighth Amendment

7  aspects of Claim 1 technically exhausted but procedurally defaulted.  Because Petitioner

8  does not attempt to show cause and prejudice or a fundamental miscarriage of justice to

9  excuse the default, the Court will dismiss these aspects of Claim 1.

10    **Claim 4 (in part)**

11    Claim 4 alleges that Mohave County's selection of prospective jurors from a

12  deficient master list violated Petitioner's Sixth and Fourteenth Amendment rights to an

13

14    [6] Petitioner does not assert that any exception to preclusion applies to any claim at
15  issue herein. <u>See</u> <u>Beaty v. Stewart</u>, 303 F.3d 975, 987 & n.5 (9th Cir. 2002) (finding no state
   court remedies and noting that petitioner did not raise any exceptions to Rule 32.2(a)).
16  First, Petitioner does not assert that any of the preclusion exceptions enumerated in Rule
17  32.2(b)(2)–expired sentence, newly discovered material facts, no fault untimely appeal or
   PCR proceeding, significant change in the law, or actual innocence of crime or death
18  sentence–apply and the Court finds none of them applicable. <u>See</u> Ariz. R. Crim. P.
19  32.2(b)(2); 32.1(d) - (h). Second, Petitioner does not argue that any of the claims are of the
   type that cannot be waived absent a personal knowing, voluntary and intelligent waiver.
20  <u>Cf.</u> <u>Cassett v. Stewart</u>, 406 F.3d 614, 622-23 (9th Cir. 2005) (addressing waiver because
21  raised by petitioner).
     The Court finds, as to all of the claims in this Order for which the Court determines
22  there is no available remedy in state court pursuant to Rule 32.2(a)(3), that none of those
23  claims fall within the limited framework of claims requiring a knowing, voluntary and
   intelligent waiver. <u>See</u> Ariz. R. Crim. P. 32.2(a)(3) cmt. (West 2004) (noting that most claims
24  of trial error do not require a personal waiver); <u>Stewart v. Smith</u>, 202 Ariz. 446, 449, 46 P.3d
25  1067, 1070 (2002) (identifying the right to counsel, right to a jury trial and right to a 12-
   person jury under the Arizona Constitution as the type of claims that require personal
26  waiver); <u>see also</u> <u>State v. Espinosa</u>, 200 Ariz. 503, 505, 29 P.3d 278, 280 (Ct. App. 2001)
27  (withdrawal of plea offer in violation of due process not a claim requiring personal waiver);
   <u>but cf.</u> <u>Cassett</u>, 406 F.3d at 622-23 (finding claim not defaulted because unclear whether
28  personal waiver would be required under state law).

impartial jury drawn from a fair cross-section of the community and to equal protection. (Dkt. 40 at 57.) Respondents contend that Petitioner failed to exhaust the Fourteenth Amendment aspect of this claim. (Dkt. 46 at 19.) On direct appeal, Petitioner alleged violations of both his Sixth Amendment fair cross-section rights and his Fourteenth Amendment equal protection rights. (ROA 15 at 4, 6.) The Court finds that Claim 4 is exhausted in its entirety.

**Claims 5 (in part) and 6 (in part)**

Claims 5 and 6 allege violations of the Fifth, Sixth, Eighth and Fourteenth Amendments based on the denial of Petitioner's rights to a master jury pool representing a fair cross-section of the community and equal protection (Claim 5) and the trial court's denial of his Batson challenges to prospective jurors Christina Pethers and David Alvarado (Claim 6). (Dkt. 40 at 57-65.) Respondents argue that only the Sixth Amendment aspect of these claims was exhausted in state court. (Dkt. 46 at 19, 22, 23.)

Petitioner presented the Sixth and Fourteenth Amendment aspects of these claims to the state court on direct appeal; therefore, these aspects of Claims 5 and 6 are properly exhausted and appropriate for review in this Court. (ROA 15 at 4, 6, 17-18.) However, Petitioner did not present the Fifth and Eighth Amendment aspects of these claims. Petitioner is now precluded by Rules 32.2(a)(3) and 32.4 from obtaining relief in state court absent an applicable exception, which he does not assert. See supra note 6. The Court finds the Fifth and Eighth Amendment aspects of Claims 5 and 6 technically exhausted but procedurally defaulted. Because Petitioner does not attempt to show cause and prejudice or a fundamental miscarriage of justice to excuse the defaults, the Court will dismiss these aspects of Claims 5 and 6 as procedurally barred.

**Claim 7 (in part)**

Claim 7 alleges violations of the Fifth, Sixth, Eighth and Fourteenth Amendments based on the denial of access to the crime scene. (Dkt. 40 at 65.) Respondents concede this claim is exhausted to the extent Petitioner alleges a due process violation under the Fourteenth Amendment. (Dkt. 46 at 25.) Petitioner does not dispute that the Fifth, Sixth

1   and Eighth Amendment aspects of this claim were not fairly presented to the Arizona

2   Supreme Court.  Petitioner is precluded by Rules 32.2(a)(3) and 32.4 from now obtaining

3   relief in state court; therefore, these aspects are technically exhausted but procedurally

4   defaulted.  Petitioner does not attempt to show cause and prejudice or a fundamental

5   miscarriage of justice to excuse the default.  Accordingly, the Court will dismiss the Fifth,

6   Sixth and Eighth Amendment aspects of this claim as procedurally barred.

7       **Claim 23**

8       Claim 23 alleges that the trial court violated Petitioner's Fifth and Fourteenth

9   Amendment rights by: (a) granting him insufficient funds for experts, and (b) denying his

10  request to appoint experienced capital co-counsel.  (Dkt. 40 at 93-95.)  Respondents argue

11  that Petitioner failed to present either portion of this claim to the state court and is now

12  precluded from doing so.  (Dkt. 46 at 51.)  In the Traverse, Petitioner proposes to dismiss

13  the claim without prejudice and asks the Court to stay the remaining claims pending

14  exhaustion of this, and any other, unexhausted claim so dismissed.[7]  (Dkt. 56 at 29.)

15  However, in his motion for discovery and evidentiary hearing, Petitioner argues that he

16  presented this claim on direct appeal and that the Arizona Supreme Court actually

17  addressed the claim. (Dkt. 72 at 25.)

18      In his Opening Brief on direct appeal, the only reference to expert funding was the

19  following statement in a footnote: "The court did allow $3,000 for expenses to be used as

20  the Appellant wished; however, that amount was not enough to include the cost of a

21  footprint experts [sic], as well as other costs that the office had to incur in this

22

23      _____

24      [7]  Following the filing of the Traverse but before the instant motions for evidentiary
    development, Petitioner filed a "Notice of Dismissal of Certain Claims Without Prejudice

25  and Motion to Stay Proceeding." (Dkt. 60.)  The Court struck the notice, finding it was an
    improper attempt, under Fed. R. Civ. P. 41(a)(1), to unilaterally dismiss without prejudice

26  individual claims from a multi-claim complaint. (Dkt. 71 at 2.)  The Court further concluded,
    as it does again herein, that Petitioner lacked an available remedy in state court to present

27  his allegedly unexhausted claims and therefore denied the requested stay of proceedings.
    (Id. at 3-4.)

28

1   representation." (ROA 15 at 29, n.2.) This statement was made in connection with

2   Petitioner's claim that expert footprint evidence from Detective Lent was improperly

3   admitted at trial because (a) Lent was improperly qualified as an expert, (b) procedures to

4   obtain the footprint evidence did not comply with Frye v. United States, 293 F. 1013 (D.C.

5   Cir. 1923), and (c) the court improperly barred the defense from presenting evidence to

6   impeach Lent. Petitioner argued in particular that Lent's testimony should have been

7   excluded because Petitioner's request for a Washington, D.C. footprint expert had been

8   denied. (Id. at 29.) Petitioner did not allege that his federal constitutional rights were

9   violated by denial of funds to retain the out-of-state expert or by denial of experienced

10  capital co-counsel. The Court finds that neither portion of Claim 23 was fairly presented

11  to the Arizona Supreme Court. The Court further concludes that the state court did not

12  otherwise address these claims.[8]

13      Petitioner asks this Court to permit him to dismiss this claim "without prejudice" if

14  the Court finds it unexhausted and to stay the action pending its exhaustion in state court.

15  (Dkt. 56 at 29.) As set forth in the Court's order denying Petitioner's motion to stay

16  proceeding, see supra note 7, Petitioner does not assert that any of the exceptions to Rules

17  32.2(a)(3) and 32.4 apply to this claim. These rules bar him from now obtaining relief on this

18  claim in state court. This claim is technically exhausted but procedurally defaulted.

19  Petitioner has not attempted to show cause and prejudice or a fundamental miscarriage of

20  justice to excuse the default. Accordingly, Claim 23 will be dismissed as procedurally

21  barred, and this action will not be stayed.

22

23

24      [8]  In its opinion, the state supreme court noted that Petitioner argued "that the trial
    court's denial of his request for expenses for an out-of-state expert on footprint

25  identification was error." Murray, 184 Ariz. at 29, 906 P.2d at 562. Stating that the trial
    court had authorized $3,000 for experts, the supreme court found that, absent a showing

26  of substantial prejudice to the defense, the trial court had not abused its discretion in
    questioning the need to use an expert from Washington, D.C., when other experts were

27  available in Arizona or neighboring states. Id. at 30, 906 P.2d at 563. No part of this

28  analysis rested on federal constitutional legal principles.

**Claim 29**

Claim 29 alleges that the Arizona Supreme Court violated Petitioner's Fifth, Sixth, Eighth and Fourteenth Amendment rights under <u>Lockett v. Ohio</u>, 438 U.S. 586 (1978), and <u>Eddings v. Oklahoma</u>, 455 U.S. 104 (1982), by improperly refusing to consider his dysfunctional childhood as mitigation during its independent sentencing review on direct appeal. (Dkt. 40 at 107-109.) Respondents contend that because the PCR court found this claim precluded by Petitioner's failure to present it in a motion for reconsideration on direct appeal, it is procedurally defaulted. (Dkt. 46 at 54; <u>see</u> PCR Order filed 1/10/00.) Petitioner argues that the Arizona Supreme Court had a fair opportunity to address this claim during its independent sentencing review on direct appeal. (Dkt. 56 at 33.)

This claim could not have been exhausted as part of Petitioner's direct appeal because it is during that appeal that the error is alleged to have occurred. To give the state's highest court the opportunity to rule on a claim of error arising during his direct appeal, the proper method was to file a motion for reconsideration with the Arizona Supreme Court. <u>See</u> Ariz. R. Crim. P. 31.18(b) ("Any party desiring reconsideration of a decision of an appellate court may file a motion for reconsideration in the appellate court within fifteen days after the filing of a decision by the appellate court."); <u>Correll v. Stewart</u>, 137 F.3d 1404, 1418 (9th Cir. 1998) (finding procedural default of claim based on error of the Arizona Supreme Court where petitioner failed to file motion for reconsideration, which is "an avenue of relief that the Arizona Rules of Criminal Procedure clearly outline."). Although Petitioner filed a motion to reconsider the decision on direct appeal, he did not raise any issue related to the Arizona Supreme Court's independent sentencing review. (ROA 36.) Rather, he waited to raise the issue in his PCR petition, and the PCR court found the claim to be precluded. Petitioner does not assert cause and prejudice or a fundamental miscarriage of justice to excuse the default. Accordingly, Claim 29 will be dismissed as procedurally barred.

**Claim 30**

Claim 30 alleges IAC in violation of Petitioner's Fifth, Sixth, Eighth and Fourteenth

1  Amendment rights based on trial counsel's failure to: (a) file a pretrial motion to preclude
2  expert tracking testimony from Detective Lent, and (b) present an expert witness to
3  challenge Lent's qualifications as a footprint expert. (Dkt. 40 at 109-11.) Respondents
4  contend Petitioner failed to present this claim to the Arizona Supreme Court in the Petition
5  for Review. (Dkt. 46 at 55.) Petitioner does not dispute the contention, but purports to
6  "withdraw this claim without prejudice" and requests a stay to exhaust the claim in state
7  court. (Dkt. 56 at 34.)

8      The record reflects that Petitioner did not present this claim to the Arizona Supreme
9  Court in his Petition for Review. (PR doc. 7.) Petitioner does not assert that any of the
10  exceptions to Rules 32.2(a)(3) and 32.4 apply to this claim, and these rules otherwise bar
11  him from now obtaining relief on this claim in state court. See supra note 7. The claim is
12  technically exhausted but procedurally defaulted. Petitioner has not attempted to show
13  cause and prejudice or a fundamental miscarriage of justice to excuse the default.
14  Accordingly, Claim 30 will be dismissed as procedurally barred, and this action will not be
15  stayed.

16  **Claims 31, 32 and 33**

17      Claims 31-33 allege IAC in violation of Petitioner's Fifth, Sixth, Eighth and
18  Fourteenth Amendment rights based on trial counsel's failure to: seek severance of trial
19  based on antagonistic defenses (Claim 31); present expert testimony to rebut the State's
20  experts (Claim 32); and properly prepare for the aggravation/mitigation hearing (Claim 33).
21  (Dkt. 40 at 111-18.) Respondents contend these claims were either never presented in state
22  court or were not presented to the Arizona Supreme Court in the Petition for Review. (Dkt.
23  46 at 58, 59-60.)

24      Petitioner did not present these claims to the Arizona Supreme Court in his Petition
25  for Review. (PR doc. 7.) If unexhausted, Petitioner states he will dismiss these claims
26  "without prejudice," and he asks the Court to stay this action pending their exhaustion in
27  state court. (Dkt. 56 at 34-35.) Petitioner does not assert that any of the exceptions to
28  Rules 32.2(a)(3) and 32.4 apply to these claims, and these rules otherwise bar him from now

1    obtaining relief in state court.  See supra note 7.  These claims are technically exhausted
2    but procedurally defaulted.  Petitioner has not attempted to show cause and prejudice or
3    a fundamental miscarriage of justice to excuse the defaults.  Accordingly, these claims will
4    be dismissed as procedurally barred, and this action will not be stayed.

5    **Claim 34**

6    Petitioner alleges that execution by the State after more than twelve years on death
7    row fails to serve any legitimate penological purpose and violates his Eighth Amendment
8    right to be free from cruel and unusual punishment.  (Dkt. 40 at 118.)  If unexhausted,
9    Petitioner states he will dismiss this claim "without prejudice," and he asks the Court to
10   stay this action pending its exhaustion in state court. (Dkt. 56 at 35.)

11   Regardless of whether Petitioner properly exhausted this claim, the Court will deny
12   it as meritless.  See 28 U.S.C. § 2254(b)(2) (Supp. 2005) (district courts may deny habeas
13   application on merits notwithstanding failure to exhaust).  The Supreme Court has not
14   decided whether lengthy incarceration prior to execution can constitute cruel and unusual
15   punishment.  See Lackey v. Texas, 514 U.S. 1045 (1995) (mem.) (Stevens, J. & Breyer, J.,
16   discussing denial of certiorari and noting the claim has not been addressed).  In contrast,
17   circuit courts including the Ninth Circuit Court of Appeals hold prolonged incarceration
18   under a sentence of death does not offend the Eighth Amendment.  See McKenzie v. Day,
19   57 F.3d 1493, 1493-94 (9th Cir. 1995) (en banc); White v. Johnson, 79 F.3d 432, 438 (5th Cir.
20   1996) (delay of 17 years); Stafford v. Ward, 59 F.3d 1025, 1028 (10th Cir. 1995) (delay of 15
21   years).  Because the Court finds this claim to be without merit as a matter of law,
22   evidentiary development is not warranted.  The motions for development will be denied,
23   and Claim 34 will be denied on the merits.

24   **Claim 35**

25   Claim 35 alleges violations of Petitioner's rights under the International Covenant

26

27

28

on Civil and Political Rights ("ICCPR"),[9] customary international law, and *jus cogens*.[10] (Dkt. 40 at 126-28.) Respondents argue this claim is procedurally defaulted because it was not presented in state court and Petitioner is now barred from obtaining relief on this claim in state court. (Dkt. 46 at 63.) Petitioner did not present this claim on direct appeal or in his PCR proceedings. If found unexhausted, Petitioner states he will dismiss this claim "without prejudice," and he asks the Court to stay this action pending its exhaustion in state court. (Dkt. 56 at 35.) Petitioner does not assert that any of the exceptions to Rules 32.2(a)(3) and 32.4 apply to this claim, and these rules otherwise bar him from now obtaining relief in state court. See supra note 7. Thus, this claim is technically exhausted but procedurally defaulted. Petitioner has not attempted to show cause and prejudice or a fundamental miscarriage of justice to excuse the default. Accordingly, the claim will be dismissed as procedurally barred, and this action will not be stayed.

**Claim 36**

Claim 36 alleges that neither lethal gas, nor lethal injection, cause instant, painless death and either method will result in physical and psychological torture of Petitioner at execution in violation of his Fifth, Sixth, Eighth and Fourteenth Amendment rights. (Dkt. 40 at 128.) Respondents do not address the lethal gas argument but contend that Petitioner failed to present the lethal injection argument in his Petition for Review to the Arizona Supreme Court. (Dkt. 46 at 67.)

---

[9] The United Nation's ICCPR was ratified by the United States in 1992 and prohibits cruel, inhumane, or degrading punishment, but does not require member countries to abolish the death penalty. See Jamison v. Collins, 100 F. Supp 2d. 647, 766 (S.D. Ohio 2000), aff'd as amended on denial of reh'g, 291 F.3d 380 (6th Cir. 2002).

[10] "[A] *jus cogens* norm . . . 'is a norm accepted and recognized by the international community of states as a whole . . . from which no derogation is permitted and which can be modified only by a subsequent norm of general international law having the same character.'" Siderman de Blake v. Republic of Argentina, 965 F.2d 699, 714 (9th Cir. 1992) (quoting Vienna Convention on the Law of Treaties, art. 53, May 23, 1969, 1155 U.N.T.S. 332).

1    The Court has reviewed the record and finds that the lethal gas aspect of this claim

2    was never presented in state court.   Petitioner does not assert that any of the exceptions

3    to Rules 32.2(a)(3) and 32.4 apply to this claim, and these rules otherwise bar him from now

4    obtaining relief in state court.   See supra note 6.   Thus, the lethal gas aspect of Claim 36 is

5    technically exhausted but procedurally defaulted.   Petitioner does not assert cause and

6    prejudice or a fundamental miscarriage of justice to excuse the default.   Accordingly, this

7    aspect of Claim 36 will be dismissed as procedurally barred.

8    In his PCR petition, Petitioner challenged lethal injection as a constitutional method

9    of execution.   (PCR pet. filed 3/5/99 at 30-33.)   In his Petition for Review, Petitioner failed

10   to explicitly present the lethal injection portion of this claim, but instead purported to

11   present it as one of the challenges to Arizona's capital sentencing scheme.   (PR doc. 7 at

12   32.)   Assuming that was sufficient to fairly present that aspect of this claim to the Arizona

13   Supreme Court, this Court "looks through" that court's summary denial of review to the

14   PCR court's decision as the last reasoned state court ruling.   See Ylst v. Nunnemaker, 501

15   U.S. 797, 803 (1991).   The PCR court found post-conviction relief on the lethal injection

16   aspect of this claim "precluded" under Rule 32.2(a)(3).   (PCR order filed 1/10/00.)   Petitioner

17   does not assert cause and prejudice or a fundamental miscarriage of justice to excuse this

18   default.   Accordingly, the lethal injection aspect of Claim 36 will be dismissed as

19   procedurally barred.

20   **Claim 37**

21   In Claim 37, Petitioner alleges that (a) he will not be competent to be executed, and

22   (b) "[t]he trial court erred in restricting the Appellant's right to a lesser included offense

23   instruction."   (Dkts. 40 at 128-30; 52 at 8, n.1.)   Both Petitioner and Respondents

24   acknowledge that (a) is not ripe and is premature for federal review.   (Dkts. 40 at 129; 46 at

25   68.)   Pursuant to Martinez-Villareal v. Stewart, 118 F.3d 628, 634 (9th Cir. 1997), aff'd, 523

26   U.S. 637 (1998), a claim of incompetency for execution "must be raised in a first habeas

27   petition, whereupon it also must be dismissed as premature due to the automatic stay that

28   issues when a first petition is filed."   If again presented to the district court once the issue

1   becomes ripe for review, Claim 37(a) shall not be treated as a second or successive petition.

2   See id. at 643-44.   Therefore, the Court will dismiss this claim without prejudice as

3   premature.

4        With regard to Claim 37(b), Petitioner concedes that the United States Supreme

5   Court has decided the issue adversely to him and states that he only raises the issue to

6   preserve it.  (See dkt. 40 at 130-32.)  Because Petitioner acknowledges that success on the

7   merits of allegation (b) is foreclosed by Schad v. Arizona, 501 U.S. 624 (1991), the Court will

8   deny the motions for evidentiary development and dismiss Claim 37(b) on the merits.

9        **Claim 40/41**

10       Claim 40/41 alleges the trial court violated Petitioner's Fifth, Sixth, Seventh, Eighth

11  and Fourteenth Amendment rights by failing to find that mitigation substantially

12  outweighed the aggravating circumstances.  (Dkt. 40 at 136-46.)  Respondents argue this

13  claim is only exhausted to the extent that it alleges a violation of Petitioner's Eighth

14  Amendment rights. (Dkt. 46 at 72.)  In his Opening Brief on direct appeal, Petitioner alleged

15  violations of his Eighth and Fourteenth Amendment rights, but did not allege violations

16  of his Fifth, Sixth or Seventh Amendment rights. (ROA 15 at 54.)  Petitioner does not assert

17  that any of the exceptions to Rules 32.2(a)(3) and 32.4 apply to these aspects of this claim,

18  and these rules otherwise bar him from now obtaining relief in state court.  See supra note

19  6.  Thus, these aspects are technically exhausted but procedurally defaulted.  Petitioner has

20  not attempted to show cause and prejudice or a fundamental miscarriage to excuse the

21  default.  Therefore, the Court will dismiss the Fifth, Sixth and Seventh Amendment aspects

22  of Claim 40/41 as procedurally barred.

23       As to the balance of this claim, an assertion of error by a sentencer with respect to

24  its weighing of aggravating and mitigating factors is at most an error of state law, which

25  may not serve as a basis for federal habeas relief.  Estelle v. McGuire, 502 U.S. 62, 67-68

26  (1991); see also Eddings, 455 U.S. at 114-15; Ortiz v. Stewart, 149 F.3d 928, 943 (9th Cir.

27  1998) (finding no constitutional violation where sentencing court considered evidence but

28  found it inadequate to justify leniency; "a sentencer is free to assess how much weight to

1    assign to such evidence").  Therefore, the remainder of Claim 40/41 is not cognizable as a

2    matter of law.  The motions for evidentiary development will be denied and this claim

3    dismissed.

4        **Claim 44**

5        Claim 44 alleges the trial court violated Petitioner's Fifth, Sixth and Fourteenth

6    Amendment rights by failing to replace counsel despite irreconcilable conflicts.  (Dkt. 40

7    at 147-52.)  Petitioner asserts that he fairly presented this claim in his PCR petition (dkt. 56

8    at 42), but Respondents contend that the PCR court's determination that the claim was

9    precluded bars review in federal court (dkt. 46 at 74).

10       Petitioner fairly presented this claim in his PCR petition and petition for review.

11   (PCR pet. filed 3/5/99 at 5-10; PR doc. 7 at 1, 16-20.)  The PCR court found the claim

12   precluded under Rule 32.2(a)(3) because it could have been raised on direct appeal.  (PCR

13   order filed 1/10/00.)  Because the Arizona Supreme Court summarily denied review of this

14   claim (PR doc. 30), this Court "looks through" that denial to the PCR court's decision as

15   the last reasoned state court ruling.  See Ylst, 501 U.S. at 803.  Thus, the claim is

16   procedurally defaulted.[11]  Petitioner has not attempted to show cause and prejudice or a

17   fundamental miscarriage of justice to excuse the default of Claim 44.  Accordingly, the

18   Court will dismiss this claim as procedurally barred.

19       **Summary of Procedural Findings**

20       The Court concludes that the following claims are procedurally barred:  the Fifth and

21   Eighth Amendment aspects of Claims 1, 5 and 6; the Fifth, Sixth and Eighth Amendment

22   aspects of Claim 7; the Fifth, Sixth and Seventh Amendment aspects of Claim 40/41; and

23   Claims 23, 29-33, 35, 36 and 44.  These claims or portions of claims will be dismissed with

24

25       [11]  In his motion for an evidentiary hearing, Petitioner suggests for the first time that
     the PCR court's preclusion ruling as to this claim is not an independent and adequate bar
26   to federal review.  (Dkt. 72 at 27.)  Because Petitioner did not include that argument in the
     Traverse, it is waived and will not be reviewed by the Court.  For that reason, and because
27   Petitioner does not seek to present any evidence relevant to the bar (see dkt. 72 at 27-29),
28   the motion for evidentiary hearing as to this issue will be denied.

prejudice.   Claims 34, 37(b) and 40/41 (in part) are meritless and will be dismissed with prejudice.   Claim 37(a) is premature and will be dismissed without prejudice.   Accordingly, Petitioner's motions for evidentiary development as to Claims 23, 29-37, 40/41 and 44 are summarily denied.

## LEGAL STANDARD FOR EVIDENTIARY HEARING, EXPANSION OF THE RECORD AND DISCOVERY

### Evidentiary Hearing

The decision whether to grant an evidentiary hearing when there are material facts in dispute is generally at the discretion of the district court judge.   See Townsend v. Sain, 372 U.S. 293, 312, 318 (1963), overruled in part by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992), and limited by § 2254(e)(2); Baja v. Ducharme, 187 F.3d 1075, 1077 (9th Cir. 1999); Rule 8, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (providing that the district court judge shall determine if an evidentiary hearing is required).   However, a judge's discretion is significantly circumscribed by § 2254(e)(2) of the AEDPA.   See Williams v. Taylor, 529 U.S. 420 (2000).

Section 2254 provides that:

*If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –*

(A) the claim relies on –

      (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

      (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (emphasis added).

As interpreted by the Supreme Court, subsection (e)(2) precludes an evidentiary hearing in federal court only if the failure to develop a claim's factual basis is due to a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."

1    Williams, 529 U.S. at 432. "The purpose of the fault component of 'failed' is to ensure the

2    prisoner undertakes his own diligent search for evidence." Id. at 435.   The Court found

3    that this rule served AEDPA's goal of furthering comity in that "federal courts sitting in

4    habeas are not an alternative forum for trying facts and issues which a prisoner made

5    insufficient effort to pursue in state proceedings." Id.; see also Cardwell v. Netherland, 971

6    F. Supp. 997, 1008 (E.D. Va. 1997) ("Ordinarily, a § 2254 petition is limited to the factual

7    record developed in state court proceedings"), aff'd Cardwell v. Greene, 152 F.3d 331 (4th

8    Cir. 1998), overruled on other grounds, Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000).   In

9    correlation, subsection (e)(2) allows factual development when a petitioner diligently

10   attempts to develop the factual basis of a claim in state court and is "thwarted, for example,

11   by the conduct of another or by happenstance was denied the opportunity to do so."

12   Williams, 529 U.S. at 432; see Baja, 187 F.3d at 1078-79.

13           In compliance with § 2254(e)(2), when the factual basis for a particular claim has not

14   been fully developed in state court, the first question in evaluating whether to grant an

15   evidentiary hearing on the claim is whether the petitioner was diligent in attempting to

16   develop its factual basis. See Baja, 187 F.3d at 1078 (quoting Cardwell v. Greene, 152 F.3d

17   331, 337 (4th Cir. 1998), overruled on other grounds, Bell v. Jarvis, 236 F.3d 149 (4th Cir.

18   2000)).   The Supreme Court set an objective standard for determining "diligence" – whether

19   a petitioner "made a reasonable attempt, in light of the information available at the time, to

20   investigate and pursue claims in state court." Williams, 529 U.S. at 435. For example, when

21   there is information in the record that would alert a reasonable attorney to the existence

22   and importance of certain evidence, the attorney "fails" to develop the factual record if he

23   does not make reasonable efforts to sufficiently investigate and present the evidence to

24   the state court. See id. at 438-40 (counsel not diligent where he was on notice of possibly

25   material evidence but conducted only a cursory investigation); Alley v. Bell, 307 F.3d 380,

26   390-91 (6th Cir. 2002) (petitioner not diligent where he knew of and raised claims of judicial

27   bias and jury irregularities in state court, but failed to investigate all the factual grounds

28   for such claims).

Absent unusual circumstances, diligence requires "that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." Williams, 529 U.S. at 437; see Bragg v. Galaza, 242 F.3d 1082, 1090 (9th Cir. 2001), amended on denial of reh'g, 253 F.3d 1150 (9th Cir. 2001) ("inactions show insufficient diligence" on ineffective counsel claim because petitioner did not request an evidentiary hearing, and brought claim only on appeal and not in a collateral proceeding). What is more, the mere request for an evidentiary hearing may not be sufficient to establish diligence if a reasonable person would have taken additional steps. See Dowthitt v. Johnson, 230 F.3d 733, 758 (5th Cir. 2000) (petitioner requested hearing but found not diligent because he failed to present affidavits of family members that were easily obtained without court order and with minimal expense); see also Koste v. Dormire, 345 F.3d 974, 985-86 (8th Cir. 2003) (petitioner not diligent where, although he requested hearing, he made no effort to develop the record or assert any facts to support claim that his counsel was ineffective for knowing of and failing to investigate his psychiatric condition), cert. denied, 541 U.S. 1011 (2004). If an evidentiary hearing is requested, a petitioner's inability to persuade a state court to conduct such a hearing does not in itself demonstrate a lack of diligence. See Cardwell, 152 F.3d at 338.

In sum, if this Court determines that a petitioner has not been diligent in establishing the factual basis for his claims in state court, then the Court may not conduct a hearing unless the petitioner satisfies one of § 2254(e)(2)'s narrow exceptions. If, however, the petitioner has not failed to develop the factual basis of his claim in state court, the Court will then proceed to consider whether a hearing is appropriate or required under the criteria set forth by the Supreme Court in Townsend. 372 U.S. 293; see Baja, 187 F.3d at 1078 (quoting Cardwell, 152 F.3d at 337). A federal district court *must* hold an evidentiary hearing in a § 2254 case when the facts are in dispute if (1) the petitioner "alleges facts which, if proved, would entitle him to relief," and (2) the state court has not "after a full hearing reliably found the relevant facts." Townsend, 372 U.S. at 312-13. In addition, the Court established six circumstances under which there is presumptively no "full and fair

hearing" at the state level:

> (1) the merits of the factual dispute were not resolved in the state hearing;
>
> (2) the state factual determination is not fairly supported by the record as a whole;
>
> (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing;
>
> (4) there is a substantial allegation of newly discovered evidence;
>
> (5) the material facts were not adequately developed at the state-court hearing; or
>
> (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

See id. at 313.  In any other case in which the facts are in dispute and diligence has been established, the district court judge "has the power, constrained only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim."  Id. at 318 (noting that if a "habeas applicant was afforded a full and fair hearing by the state court resulting in reliable findings, [the judge] may, and ordinarily should, accept the facts as found in the hearing").

**Expansion of the Record**

Rule 7 of the Rules Governing Section 2254 Cases authorizes a federal habeas court to expand the record to include additional material relevant to the determination of the merits of a petitioner's claims.  Rule 7 provides:

> The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge.  Affidavits may also be submitted and considered as part of the record.

Rule 7(b), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.  The purpose of Rule 7 "is to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing."  Advisory Committee Notes, Rule 7, 28 U.S.C. foll. § 2254; see also Blackledge v. Allison, 431 U.S. 63, 81-82 (1977).

Section 2254(e)(2), as amended by the AEDPA, limits a petitioner's ability to present

1   new evidence through a Rule 7 motion to expand the record in the same manner as it does

2   with regard to evidentiary hearings.   See Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241

3   (9th Cir. 2005) (holding that the conditions of § 2254(e)(2) generally apply to petitioners

4   seeking relief based on new evidence, even when they do not seek an evidentiary hearing)

5   (citing Holland v. Jackson, 124 S. Ct. 2736, 2737 (2004) (per curiam)).   Thus, when a

6   petitioner seeks to introduce, through a Rule 7 motion, new affidavits and other documents

7   never presented in state court for the purpose of establishing the factual predicate of a

8   claim, he must show both diligence in developing the factual basis in state court and

9   relevancy of the evidence to his claim.   If diligence is not shown, the requirements of

10   § 2254(e)(2) must be satisfied before the Court can consider expansion of the record.   To

11   find otherwise would allow circumvention of the AEDPA's restriction against federal

12   habeas courts holding evidentiary hearings in cases where the petitioner is at fault for

13   failing to develop the facts in state court.

14       When a petitioner seeks to expand the record for reasons other than to introduce

15   evidence to bolster the merits of his claim, the strictures of § 2254(e)(2) may not apply.   See

16   Boyko v. Parke, 259 F.3d 781, 790 (7th Cir. 2001) (finding it nonsensical to apply § 2254(e)(2)

17   when expansion of the record is used for reasons other than to introduce new factual

18   information on the merits of a claim).   For example, expansion of the record may be

19   appropriate to cure omissions in the state court record, see Dobbs v. Zant, 506 U.S. 357,

20   359 (1993) (per curiam) (reversing for failure to supplement the record with a late-

21   discovered transcript); see also Rule 5, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254

22   (directing answering party to submit portions of record it deems relevant), or to establish

23   diligence pursuant to § 2254(e)(2).   See Boyko, 259 F.3d at 792.

24       In evaluating the instant motion, the Court must first determine whether Petitioner

25   is seeking expansion of the record to achieve the same end as an evidentiary hearing.   If

26   so, the Court must then assess whether Petitioner demonstrated diligence in developing

27   the factual basis of the claim in state court and, if not, whether he meets the requirements

28   of § 2254(e)(2).   In addition, the Court must determine whether the proffered evidence is

1  relevant to a determination of the claim's merits, see Rule 7(a), 28 U.S.C. foll. § 2254, and

2  whether the new evidence fundamentally alters the claim such that it is rendered

3  unexhausted. See Vasquez, 474 U.S. at 258-59. If Petitioner is seeking expansion for some

4  other purpose, such as curing omissions from the state court record, establishing cause

5  and prejudice or a fundamental miscarriage of justice for a procedural default, or

6  demonstrating diligence for purposes of showing the inapplicability of § 2254(e)(2), the

7  Court need only evaluate relevance.

8  **Discovery**

9  Rule 6(a) of the Rules Governing Section 2254 Cases provides that "[a] judge may,

10 for *good cause*, authorize a party to conduct discovery under the Federal Rules of Civil

11 Procedure, and may limit the extent of discovery." Rule 6(a), 28 U.S.C. foll. § 2254

12 (emphasis added). Thus, unlike the usual civil litigant in federal court, a habeas petitioner

13 is not entitled to discovery "as a matter of ordinary course," Bracy v. Gramley, 520 U.S.

14 899, 904 (1997); see also Rich v. Calderon, 187 F.3d 1064, 1068 (9th Cir. 1999), and a habeas

15 court should not allow a habeas petitioner "to use federal discovery for fishing expeditions

16 to investigate mere speculation." Calderon v. United States Dist. Court for the Northern

17 Dist. of Cal. (Nicolaus), 98 F.3d 1102, 1106 (9th Cir. 1996); see also Aubut v. State of Maine,

18 431 F.2d 688, 689 (1st Cir. 1970) ("[h]abeas corpus is not a general form of relief for those

19 who seek to explore their case in search of its existence"). Pursuant to Bracy, whether a

20 petitioner has established "good cause" for discovery requires a habeas court to determine

21 the essential elements of the petitioner's substantive claim and evaluate whether "specific

22 allegations before the court show reason to believe that the petitioner may, if the facts are

23 fully developed, be able to demonstrate that he is . . . entitled to relief." Id. at 908-09

24 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)).

25 **MOTIONS DISCUSSION**

26 The Court now assesses whether expansion of the record, discovery and/or an

27 evidentiary hearing should be granted with respect to exhausted claims for which

28 evidentiary development is sought: Claims 1 (in part), 2, 4, 5 (in part), 6 (in part), 7 (in part),

1    42, 45 and 48.    Petitioner seeks to expand the record with Exhibit 3 only in support of

2    procedurally barred claims; therefore, expansion as to that exhibit will be denied.    Further,

3    the parties agree that Exhibits 9 and 11 are already part of the state court record.    (See PR

4    doc. 7, App. Tab 8, 9, 11.)    Accordingly, expansion as to those exhibits will be denied as

5    moot.    Petitioner does not argue that he can meet the statutory exceptions set forth in §

6    2254(e)(2)(A) & (B); therefore, the Court may not grant an evidentiary hearing on any

7    claims for which the Court determines Petitioner "failed to develop the factual basis."  28

8    U.S.C. § 2254(e)(2).

9        **Claim 1 (in part)**

10        Claim 1 alleges that the trial court violated Petitioner's right to a fair trial by denying

11    his motion for a change of venue based on pretrial publicity.    (Dkt. 40 at 43-49.)  Petitioner

12    seeks to expand the record with Exhibit 1, a collection of newspaper articles about the case

13    published before, during and after trial.    He also seeks discovery and an evidentiary

14    hearing in support of this claim.

15        The Court finds that Petitioner is not entitled to expansion of the record or an

16    evidentiary hearing because he was not diligent in developing this evidence in state court.

17    On April 15, 1992, approximately six weeks prior to trial, Petitioner filed a motion for change

18    of venue based on pretrial publicity and requested an evidentiary hearing.  (CROA 92.)  In

19    the motion, Petitioner stated that "[t]he records of all the media in Mohave County has

20    [sic] been subpoenaed for this hearing and has [sic] been incorporated herein by reference

21    and made a part hereof."[12]    (Id. at 2.)    The trial court held an evidentiary hearing on the

22    motion on April 22, 1992, during which Petitioner presented copies of numerous articles

23

24        [12]    Petitioner's counsel issued subpoenas duces tecum to the Kingman Standard;
    KBBC Radio Station, Lake Havasu City; KGMN-FM Radio Station, Kingman; KFWJ Radio
25    Station, Lake Havasu City; Lake Havasu City Herald; Today News, Lake Havasu City;
    KNLB-91 FM Christian Radio, Lake Havasu City; KZUL-FM, Lake Havasu City; K-LUK
26    LUCKY 108 FM, Bullhead City; K-West FM 98, Bullhead City; Mohave Valley News,
    Bullhead City; KMOH-TV 6, Bullhead City; KAAA-AM KZZZ-FM Radio Stations,
27    Kingman; and the Kingman Daily Miner.
28

1   published in regional newspapers and testimony from David Hawkins, who worked for five
2   northern Arizona radio stations and at times for the <u>Arizona Republic</u>, a statewide
3   newspaper. (RT 4/22/92 at 13-48, 98-111; CROA Exs. C-F, H-I.)[13]  At the hearing, Petitioner
4   stated that other outlets had been subpoenaed and he reserved the right to place
5   additional evidence in the record based on responses to the subpoenas. (RT 4/22/92 at 39,
6   99.) The trial court found that Petitioner failed to carry the burden of proving that a change
7   of venue was necessary to seat a fair and impartial jury, but reserved ruling pending jury
8   selection. (<u>Id.</u> at 110-11.) Although the motion for change of venue was renewed more
9   than a month later at the close of jury selection, Petitioner did not proffer additional
10  evidence or seek leave to further develop the factual basis for this claim. (RT 5/29/92 at 24.)
11  In addition, Petitioner did not attempt to further develop the factual basis of this claim in
12  state post-conviction proceedings.   Accordingly, the Court finds that Petitioner was not
13  diligent and his motions for an evidentiary hearing and expansion of the record will be
14  denied.[14]

15      Petitioner also seeks leave to subpoena unidentified media outlets regarding pretrial
16  publicity and to interview jurors about their biases. Petitioner's request lacks specificity.
17  Moreover, as discussed above, because Petitioner was not diligent in developing this
18  evidence in state court, the Court would not be able to consider any newly discovered
19  evidence with respect to the merits of the claim. <u>Boyko</u>, 259 F.3d at 792 (finding that
20  discovery should not be allowed to augment the merits of a petitioner's claims unless he
21  was diligent); <u>Murphy v. Bradshaw</u>, No. C-1-03-053, 2003 WL 23777736, *2 (S.D. Ohio 2003)

22  _____

23      [13]   "CROA Exs." refers to enumerated exhibits included in a one-volume "Index of
24  Exhibits of Record of Appeal to the Supreme Court of Arizona" provided as part of the
    state court record in Robert Murray's habeas action, CV 99-1812-PHX-DGC.

25      [14]  The Court notes that only pretrial publicity is relevant to this claim. <u>See</u> <u>Casey v.</u>
26  <u>Moore</u>, 386 F.3d 896, 906-909 (9th Cir. 2004) (citing <u>Sheppard v. Maxwell</u>, 384 U.S. 333, 363
27  (1966), <u>Patton v. Yount</u>, 467 U.S. 1025, 1033 (1984), <u>Rideau v. Louisiana</u>, 373 U.S. 723 (1963),
    and <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961)). To the extent Petitioner seeks to expand the
28  record with articles published after jury selection, they are not relevant.

1  ("there cannot be good cause to discover facts which could not be presented because a

2  petition is barred from an evidentiary hearing on those facts under 28 U.S.C. § 2254(e)(2)");

3  Charles v. Baldwin, No. CV-97-380-ST, 1999 WL 694716, at *2 (D. Or. Aug. 2, 1999) (no

4  good cause for discovery to locate evidence in support of the merits of a claim unless

5  petitioner first satisfies § 2254(e)(2)).  The Court finds that Petitioner has not established

6  good cause to conduct the requested discovery, and the motion will be denied.

7       **Claim 2**

8       Claim 2 alleges that Petitioner's right to a fair and impartial jury was violated by the

9  trial court's refusal to sequester the jury during voir dire, trial and deliberations.  (CROA

10  141; RT 5/27/92 at 21.)  Petitioner seeks to expand the record in support of this claim with

11  Exhibit 1, discussed above.  He also seeks discovery and an evidentiary hearing.

12       Petitioner did not proffer any evidence or attempt to otherwise develop the record

13  in support of his sequestration request in the trial court.  Further, he did not develop the

14  factual basis for this claim in state post-conviction proceedings.  Petitioner does not

15  suggest the materials in Exhibit 1 were not available during state proceedings.

16  Accordingly, the Court finds that Petitioner was not diligent and his motions to expand the

17  record and for an evidentiary hearing will be denied.

18       Petitioner seeks leave to depose:  (1) an unidentified juror, whose spouse allegedly

19  sat throughout the trial, including hearings held outside the presence of the jury; (2)

20  another unidentified juror who allegedly had an ex parte discussion with the trial judge;

21  and (3) other jurors who may have overheard deputies and the prosecutor discussing the

22  case.  (Dkt. 72 at 19.)  Petitioner fails to provide any factual basis for the requested

23  discovery.  Moreover, as discussed above, because Petitioner was not diligent in

24  developing this evidence in state court, the Court would not be able to consider any newly

25  discovered evidence with respect to the merits of the claim.  See Boyko, 259 F.3d at 792;

26  Murphy, 2003 WL 23777736, at *2; Charles, 1999 WL 694716, at *2.  The Court finds no

27  good cause, and Petitioner's motion for discovery will be denied.

28

**Claims 4 and 5 (in part)**

Claims 4 and 5 allege violations of Petitioner's Sixth Amendment right to a trial jury drawn from a fair cross-section of the community and his Fourteenth Amendment right to equal protection. Claim 4 alleges that drawing the master jury pool from an eighteen-month-old list of licensed drivers violated his rights by excluding "young" persons of approximately the same age as Petitioner who had become licensed after that list was compiled but before his trial. (Dkt. 40 at 57.) He also alleges that the trial court's refusal to delay trial until after the ten-day state statutory period had run for prospective jurors to mail back questionnaires violated his rights by automatically excluding persons from rural areas with purportedly slower postal service. (Dkt. 40 at 58-59.) Claim 5 alleges that the Mohave County Jury Commissioner, Linda Seapy, improperly excused or disqualified prospective jurors in the master jury pool in violation of Petitioner's right to a jury drawn from a fair cross-section of the community. In particular, that she used subjective criteria in reviewing their responses to the questionnaire concerning their availability to serve as jurors or to be excused from serving, such as their elderly age, responsibility for the care of young children, or a mental or physical disability. (Dkt. 40 at 59-62.) Further, he alleges that Seapy improperly excused prospective jurors who expressed religious beliefs against sitting in judgment of others. (Id. at 60.) Petitioner also alleges that Seapy improperly delegated duties to her deputy clerk, failed to follow-up with persons who had not returned juror questionnaires, and failed to verify the accuracy of juror returns. (Id. at 62.) Petitioner seeks discovery, expansion of the record and an evidentiary hearing on these claims.

To prevail on a fair cross-section claim, a litigant must prove: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Duren v. Missouri, 439 U.S. 357, 364 (1979). To establish a Fourteenth Amendment equal protection violation

in the jury selection process, a defendant also must show discriminatory intent.   <u>See</u> <u>Castaneda v. Partida</u>, 430 U.S. 482, 494 (1977); <u>Thomas v. Borg</u>, 159 F.3d 1147, 1150 (9th Cir. 1998).  Petitioner presented Claims 4 and 5 on direct appeal, and the Arizona Supreme Court rejected both, finding that Petitioner had failed to establish any of the <u>Duren</u> prongs, which also precluded success on the equal protection allegations.  <u>Murray</u>, 184 Ariz. at 22-24, 906 P.2d at 555-57.

With respect to Claim 4, Petitioner argues that the Arizona Supreme Court unreasonably applied <u>Duren</u> in finding that no cognizable group had been excluded.  (Dkt. 56 at 15.)  However, Petitioner cites only one case to support his claim that young persons are a distinctive group within the meaning of <u>Duren</u>, and that case, <u>United States v. Butera</u>, 677 F.2d 1376 (11th Cir. 1982), contains no discussion of a fair cross-section claim or youth as a distinctive group.  (Dkt 40 at 59.)  In addition, the Ninth Circuit has expressly held that young people do not comprise a cognizable, distinctive or identifiable group for purposes of a claim that such persons were underrepresented or excluded in the selection of prospective grand or petit jurors.   <u>United States v. Fletcher</u>, 965 F.2d 781, 782 (9th Cir. 1992) (dealing with college students but noting that young adults are not a cognizable group); <u>United States v. Kleifgen</u>, 557 F.2d 1293, 1296 (9th Cir. 1977) (holding that neither non-high school graduates, non-working people, nor the young are cognizable classes); <u>United States v. Potter</u>, 552 F.2d 901, 904 (9th Cir. 1977); <u>see also</u> <u>United States v. Pichay</u>, 986 F.2d 1259, 1260 (9th Cir. 1993) (per curiam) (holding that young adults do not constitute a cognizable group for purposes of an equal protection challenge to the composition of a petit jury).  Moreover, Petitioner cites no authority whatsoever to support his allegation that rural persons are a distinctive group.  The Court concludes that Petitioner cannot show that the Arizona Supreme Court's decision rejecting Claim 4 is an unreasonable application of <u>Duren</u>.  Because Claim 4 is meritless as a matter of law, the motions for evidentiary development will be denied and the claim dismissed.

With respect to Claim 5, Petitioner similarly contends that the Arizona Supreme Court "unreasonably applied Supreme Court precedent."  (Dkt. 56 at 17.)   Although

1  Petitioner does not identify the precedent to which he refers, <u>Duren</u> also governs Claim 5.

2  On their face, Petitioner's allegations do not satisfy any of the criteria necessary to state

3  a fair cross-section or equal protection claim.    Petitioner has not identified a single

4  "distinctive group" in the community that was excluded.[15]    To the contrary, Petitioner

5  indicates that the jury commissioner arbitrarily excused individuals.   As found by the

6  Arizona Supreme Court, the actions of the jury commissioner as alleged did not amount to

7  systematic exclusion.   <u>See</u> <u>Murray</u>, 184 Ariz. at 24, 906 P.2d at 557 (finding that the jury

8  commissioner used neutral criteria).   The Court concludes that Petitioner fails to establish

9  that the Arizona Supreme Court's decision rejecting Claim 5 was an unreasonable

10  application of <u>Duren</u>.  Because Claim 5 is meritless as a matter of law, the motions for

11  evidentiary development will be denied and the claim dismissed.

12  **Claim 6**

13  Claim 6 alleges that the trial court violated Petitioner's rights under <u>Batson v.</u>

14  <u>Kentucky</u>, 476 U.S. 79 (1986), by denying his challenge to the prosecutor's peremptory

15  strikes of two prospective jurors who were Hispanic.  (Dkt. 40 at 63-65.)  Petitioner seeks

16  discovery, an evidentiary hearing, and expansion of the record in support of this claim.

17  To bring a successful <u>Batson</u> challenge, a defendant must first establish a prima

18  facie case by showing that (1) the defendant is a member of a cognizable group; (2) the

19  prosecution has removed members of such a group; and (3) circumstances raise an

20  "inference" that the challenges were motivated by race.  476 U.S. at 96.  The burden then

21  shifts to the prosecutor to articulate a race-neutral basis for the peremptory challenges.

22  <u>Id.</u> at 97.  Finally, the trial court must determine, in light of the prima facie case and the

23  _____

24      [15]    The only "group" to which Petitioner specifically refers as possibly having been

25  excluded includes those whose religious beliefs preclude them from sitting in judgment of
    others.   Similarity among such jurors' beliefs fails to satisfy the "distinctive group"

26  requirement.  <u>See</u> <u>Lockhart v. McCree</u>, 476 U.S. 162, 174 (1986) ("groups defined solely in
    terms of shared attitudes that would prevent or substantially impair members of the group

27  from performing their duties as jurors . . . are not 'distinctive groups' for fair-cross-section

28  purposes.").

1  prosecutor's explanation, whether the defendant has proven purposeful discrimination.

2  Id. at 98.  In considering whether a prosecutor's explanations are race-neutral, a reviewing

3  court considers only the "facial validity of the prosecutor's explanation."  Purkett v. Elem,

4  514 U.S. 765, 768 (1995) (per curiam).

5      On direct appeal, the Arizona Supreme Court upheld the trial court's determination

6  that the prosecutor's explanation for striking the two prospective Hispanic jurors was race

7  neutral.  See Murray, 184 Ariz. at 25, 906 P.2d at 558.  For this Court, the question then

8  becomes whether that decision is erroneous in light of the record before the state court.

9  None of the evidence sought to be developed by Petitioner is relevant to resolution of

10  Claim 6, review of which is necessarily limited to the record that was before the trial court.

11  Accordingly, Petitioner's motions for expansion of the record, discovery and an

12  evidentiary hearing on this claim will be denied.

13  **Claim 7**

14      Claim 7 alleges that the trial court's denial of a defense request for access to the

15  crime scene, in light of the alleged denial of adequate funds to retain experts, violated his

16  Fourteenth Amendment rights.  (Dkt. 40 at 65-67.)  This claim was raised on direct appeal

17  and denied by the Arizona Supreme Court on state law grounds as follows:

18          Defense counsel and two investigators were allowed to visit the crime
          scene in May 1991, shortly after the crimes and about one year before trial.
19      Subsequently, a new attorney from the same public defender's office and an
      investigator were assigned to assist the original attorney.  The new attorney
20      and investigator never visited the crime scene.  On the fourth day of trial,
      more than a year after the crime was committed, Roger's counsel orally
21      moved for an order permitting the defense team to revisit the crime scene.
      The trial court denied the motion on the ground that defendant failed to
22      show a substantial need for a second inspection.  See Ariz. R. Crim. P.
      15.1(e).  The original attorney was still the primary counsel and the original
23      investigators were still available.  Furthermore, the crime scene had been
      cleaned up.  The trial court did not abuse its discretion.

24
25  Murray, 184 Ariz. at 36, 906 P.2d at 569.

      Petitioner argues that the Arizona Supreme Court's decision is contrary to
26
27  established Federal law because the court should have reviewed the claim with an eye

28  toward his constitutional right to access to evidence, rather than applying a deferential

1   "abuse of discretion" standard.  (Dkt. 56 at 20.)   Petitioner further asserts that the state

2   court "misstated the true facts that were correctly outlined in Appellant's opening brief to

3   the supreme court."  (Id. at 18-19.)  Because Claim 7, as argued by Petitioner, presents a

4   purely record-based claim that can be resolved by reference to the existing record, further

5   evidentiary development is unnecessary.  Petitioner's motions will be denied.

6   **Claim 42**

7   Petitioner seeks expansion of the record in support of Claim 42.  In the Amended

8   Petition, he captions this claim as: "The prosecutors [sic] discretion to seek the death

9   penalty is without standards and is therefore unconstitutional."  (Dkt. 40 at 146.)  In

10  contrast, in the body of the claim, Petitioner alleges only that there are no objective

11  standards for the weighing of aggravation and mitigation, which violates his Eighth and

12  Fourteenth Amendment rights.  (Id. at 146-47.)

13  First, in Smith (Bernard) v. Stewart, 140 F.3d 1263, 1271 (9th Cir. 1998), the Ninth

14  Circuit summarily rejected the petitioner's claims regarding the constitutionality of

15  Arizona's death penalty, including a claim concerning the prosecutor's discretion to decide

16  whether to seek the death penalty.  Second, the Constitution requires only that states

17  provide procedures to guide a sentencer's discretion; "the absence of specific standards

18  instructing the sentencer how to weigh the aggravating and mitigating factors does not

19  render a death penalty statute unconstitutional."  Ortiz, 149 F.3d at 944 (citing Zant v.

20  Stephens, 462 U.S. 862, 880 (1983)).  Because both facets of Claim 42 are meritless as a

21  matter of law, the motion will be denied and the claim dismissed.

22  **Claim 45**

23  Claim 45 alleges that Petitioner's Sixth and Fourteenth Amendment rights to the

24  effective assistance of counsel were violated by counsel sleeping during portions of his

25  trial. (Dkt. 40 at 152-53.)  The PCR court held an evidentiary hearing on this claim.  (PCR

26  doc. 8, tab 12 at 28.)  Petitioner seeks a federal evidentiary hearing to "submit the same

27  testimony [from the state evidentiary hearing] and perhaps some additional testimony from

28  jurors" and "to admit the testimony of Judge Chavez depending upon his deposition

1  testimony." (Dkt. 72 at 30.)

2      Petitioner is not entitled to a federal evidentiary hearing to present evidence already
3  presented to the state court.   To the extent Petitioner failed to seek or to present
4  "additional testimony from jurors" at the PCR hearing, Petitioner has not demonstrated
5  why the evidence could not have been presented during that hearing. Similarly, Petitioner
6  fails to show or allege that he attempted to obtain sworn testimony from Judge Chavez
7  during the PCR hearing.   The Court concludes that Petitioner did not diligently develop
8  this claim; therefore, the Court is barred from holding an evidentiary hearing pursuant to
9  § 2254(e)(2), and the request will be denied.

10     **Claim 48**

11     Claim 48 alleges that Petitioner's Sixth and Fourteenth Amendment rights to the
12 effective assistance of counsel were violated by trial counsel's failure to present
13 exculpatory testimony.  Specifically, in a statement to police, John Anthony reported that
14 he had observed three men with a dark blue car outside the victims' store the night of the
15 murders and that the lights were on inside the store, which was unusual for that time of
16 night.  Petitioner further asserts that if his lead counsel, Frank Dickey, had interviewed
17 Anthony, he would have learned that Anthony's wife, Angela, claimed to have heard a
18 man threaten Dean Morrison the day before his death. (Dkt. 40 at 160.)  Petitioner also
19 asserts that Dickey failed to present testimony from a bartender who could have
20 established an alibi for Petitioner and his brother. (Id.)

21     *State Court Proceedings*

22     In separate PCR petitions, Petitioner and his brother each raised similar IAC claims
23 based on counsel's failures with regard to John Anthony.  The PCR court considered
24 Robert Murray's claim first and held an evidentiary hearing at which Robert Murray's
25 counsel, Ruth O'Neill, testified.  O'Neill stated that she assigned a defense investigator to
26 locate Anthony and that the investigator reported that Anthony was at a "treatment
27 center" affiliated with the Veterans' Administration in California.  Neither defense counsel
28 requested a continuance of trial to locate or subpoena Anthony.  However, Petitioner's

1   counsel did attempt to introduce Anthony's statement based on the witness's

2   unavailability.[16]

3        In denying Robert Murray's claim, the PCR court concluded the petitioner had failed

4   to establish that Anthony had been available to testify or that O'Neill's attempts to locate

5   Anthony were unreasonable.   (CROA 3/25/98 at 67-68.)   The court further concluded that,

6   even if O'Neill's performance had been deficient, the overwhelming evidence of guilt

7   negated any prejudice finding.   (Id. at 68.)   Subsequently, the PCR court summarily denied

8   Petitioner's analogous claim, relying on its findings from Robert Murray's hearing that

9   Anthony had not been available to testify at trial.   (RT 1/10/00 at 10-11; PCR ME filed

10  1/10/00; PCR ME filed 1/20/00.)

11       In a motion for reconsideration, Petitioner proffered affidavits from John and Angela

12  Anthony, who had been located by federal habeas counsel for Robert Murray.   (PR doc.

13  8, tab 21 at 3-5.)   In his affidavit, John Anthony generally described his observations the

14  night of the murders, but in considerably less detail than in the initial interview with police.

15  (Id., tab 9.)   Angela Anthony recounted her husband telling her about seeing the three men

16  and the car, which both thought was suspicious, and about hearing a man threaten Dean

17  Morrison the day before the murders.   (Id.)   Neither addressed John Anthony's

18  whereabouts, or his availability to appear as a witness, at the time of trial.   (Id., tabs 8, 9,

19  21.)   The PCR court denied the motion, and the Arizona Supreme Court summarily denied

20  review. (RT 9/5/01 at 19-20; PR doc. 29.)

21       *Analysis*

22       To prevail on an IAC claim, a petitioner must show that counsel's performance was

23  deficient and that the deficiency prejudiced the defense.   Strickland v. Washington, 466

24  U.S. 668, 687-88 (1984).   However, a court need not address both components of the

25  inquiry; a court may dispose of an ineffectiveness claim on the ground of lack of sufficient

---

27       [16]   The trial court sustained the prosecutor's objections to admission of the

28  statement as hearsay and lacking foundation.   (RT 6/5/92 at 133-41.)

1   prejudice, if that is easier, without evaluating counsel's performance. Id. at 697. Petitioner

2   seeks evidentiary development solely as to the performance prong. Because the Court

3   concludes that Petitioner cannot establish prejudice even if deficient performance is

4   shown, it declines to allow further development of the claim.

5         To establish prejudice under Strickland, a petitioner must "show that there is a

6   reasonable probability that, but for counsel's unprofessional errors, the result of the

7   proceeding would have been different. A reasonable probability is a probability sufficient

8   to undermine confidence in the outcome." Id. at 694. Under this prong, "an error by

9   counsel, even if professionally unreasonable, does not warrant setting aside the judgment

10  of a criminal proceeding if the error had no effect on the judgment." Id. at 691.

11        The defense theory at trial was that the Murrays burglarized the store and home

12  after finding the victims already dead. Petitioner asserts there is a reasonable probability

13  he would not have been convicted if counsel had presented the following evidence: (1)

14  John Anthony's statement that he observed three men at the store, who differed in

15  appearance from the Murrays and who had a car different than the one driven by the

16  Murrays; (2) Angela Anthony's statement that she heard a man threaten Morrison the day

17  before the murders; and (3) an unidentified witness's testimony that the Murrays were

18  elsewhere at the time the three men were seen at the store.

19        Evidence at trial reflected that sometime before 8:00 a.m. on May 14, 1991, police

20  found one of Morrison's tow trucks abandoned westbound on I-40 near Kingman. A short

21  while later, the victims' bodies were found at their residence. Both had suffered shotgun

22  wounds to the head and multiple gunshot wounds to the head and body. The store and

23  house had been ransacked. Various .22, .25, and .38 caliber bullets, casings, and shells

24  were found in the house, as well as shotgun pellets, but no expended shotgun shells were

25  found. A couch cushion cover was missing as was the drawer from the store's cash

26  register.

27        At roughly the same time, the Murrays, driving a white car eastbound on I-40 on

28  nearly the opposite side of the state, were arrested by police on unrelated charges

following a high speed chase.  Robert, the driver, threw a loaded .38 revolver from the car, and Roger threw out a loaded .25 semiautomatic pistol.  Inside the vehicle, police found a loaded twelve-gauge sawed-off shotgun and live double-ought buckshot shells.  Police also found a scanner and connecting knob in the car that fit the empty bracket of Morrison's tow truck found on westbound I-40 and a road atlas with circles drawn around the locations of two rural shops or restaurants–Oasis and Grasshopper Junction–that were not otherwise indicated on the map.  In addition, police found a couch cushion cover matching the one missing from the victims' home that contained rolled coins stamped "Dean's Enterprises, Grasshopper Junction, Kingman, Arizona, 86401," along with a pillow case containing several hundred dollars in rolled coins and cash.  Further, human blood and tissue were found on Robert's shirt, Roger's pants and the cushion cover that were later determined to be consistent with the victims' blood types.[17]  In addition, two spent shotgun shell casings were found in Robert's hip pocket and keys recovered from Robert's pocket were later determined to fit a pickup that was on Morrison's property.  Casings found at the crime scene and in Robert's pocket were fired by the three guns found with the Murrays.

At the murder scene, police found prints from tennis shoes and Western-style boots.  It was later determined that each matched tennis shoes and boots worn by Roger and Robert, respectively, at the time of their arrest.  Further, the Murrays' shoeprints were the only unidentified ones entering or leaving the crime scene, and one trail of prints made by the tennis shoes, the boots and Morrison's slippers indicated resistance by Morrison.  In addition, rolled and loose coins were found in the courtyard amidst intermingled shoeprints of the victims and the Murrays.  The Murrays' and Morrison's shoeprints were

---

[17]  As described in the opinion on direct appeal, "[t]he blood on Roger's pants could have come from either victim or Robert, but not from Roger.  The blood on Robert's shirt could have come from either victim, but not from Robert or Roger.  The blood on the cushion could have come from Appelhans, but not from Morrison, Robert, or Roger."  Murray, 184 Ariz. at 22, 906 P.2d at 555.

1   also found outside the store near tire tracks left by Morrison's tow truck that was found

2   abandoned on westbound I-40.

3       For there to be a reasonable probability of a different outcome based on the

4   allegedly exculpatory evidence, jurors would have to believe that the victims were

5   murdered by unknown persons who left the murder weapons, shotgun shells, and money

6   at the scene before fleeing.   Further, jurors would have to believe that the Murrays

7   happened on the scene, found the victims dead, burglarized the store and residence,

8   getting the victims' blood on their clothes, and took the guns, expended and unexpended

9   shotgun shells, keys, money and the couch cushion cover.   In addition, the Murrays must

10  have then taken and later abandoned Morrison's tow truck on westbound I-40 or

11  happened upon it after it was abandoned, and then removed the scanner and connecting

12  knob from the tow truck before driving almost 300 miles.   Given the overwhelming nature

13  of the evidence at trial and the implausibility of the foregoing explanations of that

14  evidence, the Court concludes that the purportedly exculpatory evidence does not

15  undermine confidence in the outcome at trial.   Petitioner cannot prevail on his IAC claim

16  because he cannot establish prejudice.   Accordingly, the IAC claim will be denied on the

17  merits, and Petitioner's request for evidentiary development as to this claim will be denied.

18      Based on the foregoing,

19      **IT IS ORDERED** that, pursuant to Petitioner's request, Claims 43, 47, 49-52 and 54-

20  56 are **DISMISSED** as duplicative of other claims in the Amended Petition.   (Dkt. 56.)

21      **IT IS FURTHER ORDERED** that the following claims are **DISMISSED WITH**

22  **PREJUDICE**:   (a) Claims 1 (in part), 5 (in part), 6 (in part), 7 (in part), 23, 29-33, 35, 36,

23  40/41(in part), and 44 based on a procedural bar; and (b) Claims 4, 5, 34, 37(b), 42, 40/41 (in

24  part) and 48 on the merits as a matter of law.

25      **IT IS FURTHER ORDERED** that Claim 37(a) is **DISMISSED WITHOUT**

26  **PREJUDICE** as premature.

27      **IT IS FURTHER ORDERED** that Petitioner's Motion for Discovery and Evidentiary

28  Hearing is **DENIED**.   (Dkt. 72.)

1     **IT IS FURTHER ORDERED** that Petitioner's Motion to Expand the Record Under

2  Rule 7 of the Rules Governing Section 2254 Cases is **DENIED**. (Dkt. 73.)

3     **IT IS FURTHER ORDERED** that if, pursuant to LRCiv. 7.2(g), Petitioner or

4  Respondents file a Motion for Reconsideration of this Order, such motion shall be filed

5  within fifteen (15) days of the filing date of this Order.

6     **IT IS FURTHER ORDERED** that the Clerk of Court forward a courtesy copy of this

7  Order to the Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, AZ 85007-

8  3329.

9     DATED this 29th day of September, 2005.

David G. Campbell
United States District Judge