**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roger Wayne Murray, | ) No. CV 03-775-PHX-DGC |
| | ) |
| Petitioner, | ) <u>DEATH PENALTY CASE</u> |
| | ) |
| vs. | ) |
| | ) **ORDER RE: MOTION FOR** |
| | ) **RECONSIDERATION** |
| Dora Schriro, et al., | ) |
| | ) |
| Respondents. | ) |
| | ) |
| | ) |
| _____ | ) |

　　　　Petitioner Roger Wayne Murray ("Petitioner") is a state prisoner sentenced to death. This Court denied Petitioner's motion for evidentiary development in support of various habeas claims. (Dkt. 90.)[1]  Before the Court is Petitioner's Motion for Reconsideration. (Dkt. 91.)  Generally, motions to reconsider are appropriate only if the Court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." <u>School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.</u>, 5 F.3d 1255, 1263 (9th Cir. 1993).  Petitioner seeks reconsideration in connection with Claims 5, 7, 44, 45 and 48. He does not present newly discovered evidence or assert an intervening change in controlling law, but asserts that he is entitled to reconsideration based on factual and legal errors. (Dkt. 91 at 2.)

_____

　　　　[1]  "Dkt." refers to the documents in this Court's case file.

1

2      **Claim 5**

3          The Court denied Claim 5 on the merits.  (Dkt. 90 at 28-29.)  In that claim, Petitioner

4  alleged that the state supreme court "unreasonably applied Supreme Court precedent" by

5  failing to find that his Sixth and Fourteenth Amendment rights to a master jury pool

6  representing a fair cross-section of the community and equal protection were violated.

7  (Dkts. 56 at 17; 40 at 57-65.)    Specifically, he alleged that the Mohave County Jury

8  Commissioner, Linda Seapy, improperly excused or disqualified persons from the master

9  jury pool who, in response to a questionnaire regarding their availability to serve, indicated

10  they were unwilling to sit in judgment of others for religious reasons.  (Dkt. 56 at 60.)  This

11  Court concluded that Petitioner failed to allege any of the criteria necessary to state a fair

12  cross-section or equal protection claim, including in relevant part, the improper exclusion

13  of a "distinctive" group in the community.[2]  (Dkt. 90 at 29.)  In a footnote, the Court stated

14  that:

15              The only "group" to which Petitioner specifically refers as possibly having
              been excluded includes those whose religious beliefs preclude them from
16              sitting in judgment of others.  Similarity among such jurors' beliefs fails to
              satisfy the "distinctive group" requirement.  See Lockhart v. McCree, 476
17              U.S. 162, 174 (1986) ("groups defined solely in terms of shared attitudes that
              would prevent or substantially impair members of the group from performing
18              their duties as jurors . . . are not 'distinctive groups' for fair-cross-section
              purposes.").
19
20  (Id., n. 15.)

21

22          [2]  To prevail on a fair cross-section claim, a litigant must prove:  "(1) that the group
23  alleged to be excluded is a 'distinctive' group in the community; (2) that the representation
    of this group in venires from which juries are selected is not fair and reasonable in relation
24  to the number of such persons in the community; and (3) that this underrepresentation is
    due to systematic exclusion of the group in the jury-selection process."  Duren v. Missouri,
25  439 U.S. 357, 364 (1979).  To establish a Fourteenth Amendment equal protection violation
26  in the jury selection process, a defendant also must show discriminatory intent.  See
    Castaneda v. Partida, 430 U.S. 482, 494 (1977); Thomas v. Borg, 159 F.3d 1147, 1150 (9th Cir.
27  1998).

28                                    - 2 -

1     Petitioner argues that the Court misconstrued and misapplied McCree, which he
2  maintains stands for the proposition that "both sides 'must be given the opportunity to
3  identify . . . prospective jurors [who oppose capital punishment] by questioning them at
4  voir dire about their views of the death penalty.'" (Dkt. 91 at 2.)  McCree concerned
5  whether excusing prospective jurors *for cause* during *voir dire* based on their opposition
6  to the death penalty violated the fair cross-section clause.[3]  The Supreme Court held that
7  it did not, stating that the Constitution does not prohibit "the removal for cause, prior to
8  the guilt phase of a bifurcated capital trial, of prospective jurors whose opposition to the
9  death penalty was so strong that it would prevent or substantially impair the performance
10 of their duties as jurors at the sentencing phase."  476 U.S. at 165.  In so holding, it
11 determined that shared attitudes among prospective jurors against the death penalty was
12 not sufficient to establish that they were members of a distinctive group for purposes of
13 the fair cross-section clause.[4]  Id.  In this case, the Court concluded that prospective venire
14 members who expressed an unwillingness to sit in judgment of others, i.e., who shared an
15 attitude against judging others, did not constitute a "distinctive group" for purposes of
16 a fair cross-section and equal protection challenge.  Petitioner has not demonstrated that
17 the Court clearly erred.  Accordingly, reconsideration will be denied.

18   **Claim 7**

19    Claim 7 alleges that the trial court's denial of a defense request for access to the
20 crime scene, in light of the alleged denial of adequate funds to retain experts, violated his

21 _____

22   [3]  Contrary to Petitioner's suggestion, McCree does not hold that parties are entitled
23 to question prospective venire members before they may be excused as not qualified to
   serve.

24   [4]  Gray v. Mississippi, 481 U.S. 648, 652 (1987), and Wainwright v. Witt, 469 U.S. 412
25 (1985), cited by Petitioner, are not to the contrary.  Both concerned challenges for cause
26 during voir dire, not fair cross-section challenges to the composition of the venire,
27 although the dissent in Witt treated death qualification as a violation of the fair cross-
   section requirement.  Witt, 469 U.S. at 439-62 (Brennan, J., dissenting).

28

1    Fourteenth Amendment rights.    (Dkt. 40 at 65-67.)    The Court denied evidentiary

2    development in support of this claim because it is subject to review on the state court

3    record. (Dkt. 90 at 30-31.) Petitioner argues this claim is subject to *de novo* review because

4    the state court's resolution is not entitled to deference, citing 28 U.S.C. § 2254(d)(1) and

5    Oswald v. Bertrand, 374 F.3d 475 (7th Cir. 2004). However, even if subject to *de novo*

6    review, Petitioner fails to explain how that entitles him to  evidentiary development of a

7    record-based claim.  Reconsideration will be denied.

8    **Claim 44**

9        In Claim 44, Petitioner alleged the trial court violated his Fifth, Sixth and Fourteenth

10   Amendment rights by failing to replace counsel despite irreconcilable conflicts.  (Dkt. 40

11   at 147-52.)    The Court found this claim procedurally barred based on the PCR court's

12   finding that it was precluded under Ariz. R. Crim. P. 32.2(a)(3) because it could have been

13   raised on direct appeal. (Dkt. 90 at 17.) Petitioner seeks reconsideration because the Court

14   did not address his arguments that the trial court's ruling was not adequate to bar federal

15   habeas review of the claim. (Dkt. 91 at 7-9.)

16       The crux of Petitioner's argument is that Claim 44 is, in essence, a claim concerning

17   ineffective assistance of counsel ("IAC").  As such, the claim could not have been raised

18   on appeal because the Arizona Supreme Court has stated IAC claims should be presented

19   in post-conviction proceedings.  See, e.g., State v. Spreitz, 202 Ariz. 1, 2, 39 P.3d 525, 526

20   (2002); State v. Atwood, 171 Ariz. 576, 599, 832 P.2d 593, 616 (1992); accord Lambright v.

21   Stewart, 241 F.3d 1201, 1203-1204 (9th Cir. 2001) (noting that the state supreme court has

22   clarified that IAC claims should be raised in post-conviction proceedings).  However, Claim

23   44 is not an IAC claim.  Rather, in both his habeas petition and his state PCR petition,

24   Petitioner alleged that the *trial court* erred by failing to appoint different counsel with

25   whom Petitioner did not have irreconcilable differences; Petitioner did *not* assert that

26   counsel with whom he allegedly had irreconcilable differences rendered ineffective

27   assistance.

28
                                         - 4 -

1   Under Arizona law, challenges to a trial court's failure to appoint new counsel on

2  the basis of irreconcilable differences are properly raised on direct appeal, as the PCR court

3  found.  See e.g., State v. Cromwell, 211 Ariz. 181, 119 P.3d 448, 453-55 (2005) (citing cases);

4  State v. Torres, 208 Ariz. 340, 342-43, 93 P.3d 1056, 1058-59 (2004) (trial court has obligation

5  to inquire into factual basis for a defendant's request to appoint new counsel); State v.

6  Moody, 192 Ariz. 507, 968 P.2d 578 (1998) (challenge to trial court's failure to substitute

7  counsel based on irreconcilable differences reviewed on direct appeal); cf. Murray, 184

8  Ariz. at 27, 906 P.2d at 560 (supreme court noted that the trial court held a hearing

9  concerning alleged irreconcilable differences and determined that trial court had not

10  abused its discretion in denying Petitioner hybrid representation).   Petitioner has not cited

11  any Arizona case indicating that a challenge to a trial court's denial of a motion to

12  substitute counsel based on irreconcilable differences should be raised in PCR

13  proceedings.   Therefore, the Court denies reconsideration of its ruling that Claim 44 is

14  procedurally barred.

15   **Claim 45**

16   The Court denied evidentiary development in support of Claim 45.  In this claim,

17  Petitioner alleges that his Sixth and Fourteenth Amendment rights to the effective

18  assistance of counsel were violated by counsel sleeping during portions of his trial.  (Dkt.

19  40 at 152-53.)  Although the state PCR court held an evidentiary hearing on the claim (PCR

20  doc. 8, tab 12 at 28), Petitioner requested a federal evidentiary hearing to "submit the same

21  testimony [from the state evidentiary hearing] and perhaps some additional testimony from

22  jurors" and "to admit the testimony of Judge Chavez depending upon his deposition

23  testimony." (Dkt. 72 at 30.)  The Court determined that 28 U.S.C. § 2254(e)(2) prohibited an

24  evidentiary hearing because Petitioner had not demonstrated diligence for his failure to

25  present evidence not presented to the state court during the PCR hearing.  (Dkt. 90 at 32.)

26   In his motion for reconsideration, Petitioner seeks to "withdraw" his request for

27  evidentiary development of Claim 45, thereby bypassing the prohibition on evidentiary

28   - 5 -

development set forth in 28 U.S.C. § 2254(e)(2). Instead, he seeks a federal court hearing to re-present the same evidence presented in state court in order to show that the state court's findings were unreasonable. <u>See</u> 28 U.S.C. § 2254(d)(2).

This Court's general procedures order permitted the filing of evidentiary development motions to enable the Court to determine early on in the case whether extensive investigation and discovery would be necessary to develop any of Petitioner's claims. Petitioner concedes that no such development is necessary for this claim. Rather, he asks the Court to hold a hearing to assess whether the state court's findings of fact are unreasonable. In his view, the state court's hearing was not full and fair.

The Court is not presently in a position to determine the propriety of holding such a hearing because it has not yet fully reviewed the state court record in this matter. Upon doing so, the Court will, pursuant to the Rules Governing Section 2254 Cases, determine for itself whether a hearing is warranted to assess the reasonableness of the state court's findings of fact and conclusions of law. Rule 8, 28 U.S.C. foll. § 2254 ("If the petition is not dismissed, the judge *must review the answer, any transcripts and records of state-court proceedings*, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted.") (emphasis added). In the event the Court concludes that a hearing is necessary, it will notify the parties. Because Petitioner no longer seeks evidentiary development with respect to Claim 45, reconsideration of the Court's order denying evidentiary development will be denied.

**<u>Claim 48</u>**

In Claim 48, Petitioner alleged that trial counsel rendered ineffective assistance by failing to present exculpatory evidence. Specifically, he alleged that John Anthony, in a statement given to police shortly after the murders, reported seeing three men, who differed in appearance from Petitioner and his brother and had a different car than theirs, outside

the victims' Grasshopper Junction store and home the night of the murders.[5]   Petitioner argued that there was a reasonable probability of a different outcome if counsel had presented this evidence.[6]   The Court denied the claim on the merits after concluding that Petitioner could not establish prejudice.   (Dkt. 90 at 36.)   Petitioner seeks reconsideration based on the Court's statement that the defense theory at trial was that the Murrays burglarized the victims' store and home after finding the victims already dead.   (Id. at 34.) Petitioner argues that the defense theory at trial actually was that the Murrays stole items belonging to the victims which they found inside a tow truck, abandoned miles from Grasshopper Junction, that belonged to victim Dean Morrison.[7]   However, a different outcome based on the allegedly exculpatory evidence is no more reasonably probable under that theory.

---

[5]   Anthony also reported driving by that location several hours later and noting that, contrary to usual, the lights remained on inside.

[6]   He also argued in his Traverse that counsel would have learned, if he had interviewed Mr. Anthony, that Anthony's wife heard a man threaten victim Dean Morrison the day before the murders.   Petitioner did not develop facts during his state PCR proceedings regarding the extent of trial counsel's efforts to locate or interview the Anthonys.

[7]   Petitioner does not cite the record to support this contention and he concedes that this defense "may not have been articulated at trial." (Dkt. 91 at 14.)   Petitioner's PCR counsel stated that "there was very little 'theory of defense'" at trial, but that his attorneys at least argued that he was innocent and that the murders must have been committed by someone else.   (PCR pet at 18.)   Robert's trial counsel testified that "basically the theory of the defense that we presented at trial was that the reason that [Robert] had the money from Grasshopper Junction is they [Robert and Roger] had somehow gotten to Grasshopper Junction, the bodies were there which would explain the physical evidence found in the car, but that they didn't commit the murders." (Dkt. 64, ex. A at 8-9.)   She stated that testimony from Anthony that he had seen other persons at Grasshopper Junction shortly before the murders would have supported that theory.   (Id. at 9-10.)

1    As the Court described previously, in addition to possessing the murder weapons,

2  expended and unexpended shotgun shells, and a bloody couch cushion cover taken from

3  the victims' home, Petitioner and his brother had blood on their clothing that was

4  consistent with the victims' blood types[8] and footprints consistent with the Murrays'

5  shoes were intermingled with footprints of one of the victims at their home.  (Id. at 34-35.)

6  For there to be a reasonable probability of a different outcome under the theory that the

7  Murrays were never at Grasshopper Junction, jurors would have to believe that the victims

8  were murdered at their home by unknown persons, who left footprints consistent with the

9  footwear worn by Petitioner and his brother.  They would also have to believe that the

10  killers took the murder weapons, expended and unexpended shotgun shells, money, the

11  couch cushion cover, keys to another of Morrison's vehicles and placed them in

12  Morrison's tow truck before abandoning the tow truck miles away and leaving the stolen

13  items inside.  Further, jurors would have to believe that the Murrays then happened upon

14  the abandoned tow truck, took the weapons, shotgun shells, money, keys, couch cushion

15  cover, and the tow truck scanner and knob and, in the process, got the victims' and/or their

16  own blood on their clothing, before being pulled over for unrelated reasons by police on

17  the opposite side of the state.  A different outcome was not reasonably probable under this

18  theory if the allegedly exculpatory evidence had been presented.  To the extent that

19  Petitioner otherwise seeks reconsideration, he fails to present new facts or law to support

20  his request.  Reconsideration will be denied.          Accordingly,

21    **IT IS ORDERED** that Petitioner's motion for reconsideration regarding Claims 5, 7,

22  44, 45 and 48 is **DENIED**.  (Dkt. 91.)

23

24    [8] As described in the opinion on direct appeal, "[t]he blood on Roger's pants could

25  have come from either victim or Robert, but not from Roger.  The blood on Robert's shirt

26  could have come from either victim, but not from Robert or Roger.  The blood on the

27  cushion could have come from [victim Jackie] Appelhans, but not Morrison, Robert, or

   Roger."  Murray, 184 Ariz. at 22, 906 P.2d at 555.

28

1    **IT IS FURTHER ORDERED** that the Clerk of Court forward a courtesy copy of this

2   Order to the Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, AZ 85007-

3   3329.

4        DATED this 26th day of January, 2006.

5

6

7   _____

8           David G. Campbell
          United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28